## CLARKE vs. HARRIS.

APPEAL from *Baltimore* County Court. This was an action of *assumpsit*, brought by the appellee against the appellant. The declaration contained two counts. The *first count* sets out a bill of exchange drawn on the 19th of October 1801, by *A. Brown*, on *W.* and *T. Raikes & Co.* of *London*, in favour of *Clarke*, (the defendant in the court below,) or order, for £6500 sterling, and by him endorsed to *Harris*, the plaintiff, who endorsed it to *G. Simpson*, the cashier of the Bank of the *United States*, and by him endorsed to *F. Baring & Co.* Averment, that *F. Baring & Co.* on the 19th of January 1802, at *London*, to wit, &c. caused the bill of exchange to be presented to *W.* and *T. Raikes & Co.* for their acceptance, but they neglected and refused so to do, and the bill of exchange was protested for nonacceptance, of which premises *Clarke* afterwards, on the 1st of July 1802, had notice. That *F. Baring & Co.* afterwards, when the bill became due and payable, to wit, on the 23d of March 1802, caused the bill to be presented to *W.* and *T. Raikes & Co.* for payment, but they did not then, or any other time, pay the same, but neglected and refused so to do, and the bill was protested for nonpayment. That by reason of the premises the plaintiff, as endorsee of the bill, was obliged to pay, and did pay, the sum of money mentioned in the bill, together with re-exchange, interest, damages and costs, amounting, &c. to £11,253 6 6 current money, *of all which premises, Clarke*, (the defendant,) afterwards, &c. *had notice*, by reason whereof he became and was liable to pay, &c. and being so liable, he in consideration thereof afterwards, &c. undertook, and then and there faithfully promised the plaintiff to pay, &c. The *second count* was for money laid out, paid and expended, by the plaintiff, for the defendant, &c. The general issue was pleaded.

1. The plaintiff at the trial proved that *A. Brown* was a person using trade and commerce, and carrying on merchandize in a book, which he produced, and that the defendant afterwards admitted he had received such written notices. The defendant objected to the testimony, because the notices being in writing, and no notice having been given to him to produce them, no evidence ought to be given of their contents—Held that the evidence was admissible.

Where A drew a bill of exchange on B, for the sole purpose of having it discounted to raise money for the use of A, and for enabling him to do so, C, to whom the bill was made payable at the request of A, endorsed the bill in blank, and delivered it to A, who afterwards, for the purpose of giving it further credit, and of thereby enabling him to raise money on it for his own benefit, applied to H, who for that purpose endorsed the bill in blank, and delivered it to A, who sold it to S, for his own benefit. The bill was presented to B, the drawee, for acceptance and payment, and not having been accepted or paid, was duly protested and legal notice thereof given to the parties and payment demanded, which was made by H. In an action of *assumpsit* by H, against C, to recover the amount so paid—Held, that H was entitled to recover from C the sum of money so paid by him.

In such an action it need not be averred in the declaration that the defendant had notice of the protest for nonpayment of the bill, and that the plaintiff had paid the amount, &c.

In the margin: *In assumpsit on a foreign bill of exchange by the second endorsor, who had paid the bill, against the payee, evidence was offered to prove that the o-riginal bill, and an original pro-test for nonaccep-tance, and protest for nonpayment, were delivered to the attorney of the holder of the bill, for the purpose of instituting suits thereon against the payee, and second endor-sor, (the plaintiff and defendant in this action) Re-cords of the judg-ments rendered in those suits on the said bill were also offered in evi-dence; and also parol evidence that the protest for nonaccep-tance was lost or mislaid——Held, that the testimony was proper and competent to prove the protest for nonacceptance of the bill.*

*A witness, an agent of the holder of a bill of ex-change, proved, that in the usual course of the post he received pro-tests for the non acceptance and nonpayment of the bill, and on the days that he received them he gave the defend-ant (the payee,) verbal notice of such protests, and shortly after, ei-ther the same or the next day, for greater certainty made out written notices to be sent to the defendant of the protests, & copied the same*

1810.

Clarke
vs
Harris

chandize at the city of *Baltimore*, on, after and before, the 19th of October 1801, and that he drew his bill of exchange for £6500 sterling on *W.* and *T. Raikes*, merchants of *London*, by the names of *W.* and *T. Raikes*, & Co. in favour of *Clarke*, the defendant, or order. And. that *Clarke* afterwards endorsed the bill of exchange to *Harris*, or order, and that *Harris* afterwards endorsed it to *G. Simpson*, cashier and agent of the Bank of the *United States*, or order, for and on account of the president, directors and company, of the Bank of the *United States*; and further, that *Simpson* afterwards, as agent of the president, directors and company, of the Bank of the *U. S.* endorsed the bill to *F. Baring* & Co. or order, and that afterwards *F. Baring* & Co. caused the bill to be protested for nonpayment thereof, viz. on the 23d of March 1802. And the plaintiff offered to prove by the oath of *D. Harris*, for that purpose sworn to the jury, that the original bill of exchange, together with an original protest thereof for nonacceptance, and protest for nonpayment thereof, came to his hands as agent for the Bank of the *U. S.* and were respectively delivered by him to the district attorney of the *U. S.* for the purpose of instituting suits on the bill against *Clarke*, (the defendant,) and *Harris*, (the plaintiff). He also offered in evidence the records of proceedings in the circuit court of the *U. S.* in and for the *Maryland* district, against *Harris* and *Clarke* respectively, at the suit of *G. Simpson.* And offered to prove, that the bill of exchange in those records mentioned is the same bill offered in evidence in this cause; and that *Simpson*, the plaintiff in the records, is the same *Simpson* who is cashier and agent of the Bank of the *U. S.* and that *Harris*, the plaintiff in this suit, and *Clarke* the defendant in this suit, are respectively the same persons who were defendants in the records. He then offered to prove by *D. Harris*, that the protest for nonacceptance of the bill of exchange is not in his possession, nor in the possession of the district attorney of the *U. S.* nor in the office of the clerk of the circuit court of the *U. S.* among the other papers, but is lost or mislaid; and therefore offered, under such circumstances, to be permitted by parol to prove the protest for nonacceptance. To the admissibility of which evidence the defendant objected. But the county court, [*Nicholson*, Ch. J. and *Hollingsworth*, A. J.] were of opinion, that the testimony

was proper and competent to prove the protest for nonacceptance. The defendant excepted.

2. The plaintiff then offered to give in evidence by *D. Harris*, the cashier of the Office of Discount and Deposit, that in the usual course of the post from *Philadelphia* to *Baltimore*, he received a letter from *G. Simpson*, cashier of the Bank of the *U. S.* dated the 3d of April 1802, enclosing protests for nonacceptance of the bill of exchange, and that he, on the day he received the same, called on the defendant, and gave him verbal notice of such protest; and shortly after, he believes on the 8th of the same month, for greater certainty, he made out a written notice to be sent to the defendant of the protest, and copied such notice in a book, which the witness produced to the court, and that the defendant did afterwards admit he had received the written notice. The plaintiff further offered to give evidence by *D. Harris*, that he received a letter from *Simpson*, dated in *Philadelphia* the —— day of —— 1802, containing protests of the bill of exchange for nonpayment, and that he received the same in the usual course of the post from *Philadelphia* to *Baltimore*; and that on the day of receiving the same, he called on the defendant, and gave him verbal notice of the last protests; and that on the same or the next day he, for greater certainty, made out a written notice to the defendant, and delivered the same to *L. G.* to be delivered to the defendant, and that the witness copied this notice in a book. then produced by him; and did offer to prove by the witness, that the defendant did afterwards acknowledge to him the receipt of the written notice. To this testimony, the defendant objected, because the notices being in writing, and no notice having been given by the plaintiff to the defendant to produce them, no evidence ought to be given of their contents. But the county court, [*Nicholson*, Ch. J. and *Hollingsworth*, A. J.] were of opinion, that such evidence was admissible to be given to the jury; and the same was accordingly given. The defendant excepted.

3. The plaintiff then gave in evidence, that the bill of exchange was made by *Brown* for the sole purpose of being discounted to raise money for his own use; and that for enabling him to do so the defendant, at the request of *Brown*, and for the sole purpose of enabling him to raise money thereon, but without any other consideration, did

endorse the bill in blank, and immediately delivered it back, so endorsed, to *Brown*, but at that time had no knowledge or information that the bill was to be endorsed after him by the plaintiff, or that *Brown* intended to apply to the plaintiff to endorse the bill.   And further gave in evidence, that *Brown*, after receiving back the bill so endorsed by the defendant, carried it to the plaintiff, and requested him to endorse the bill after the defendant, for the purpose of giving it further credit, and of thereby enabling him, *Brown*, to raise money on it for his own benefit. That the plaintiff, in compliance with this request, and for the purpose of giving additional credit to the bill, and to enable *Brown* to obtain money thereon for his own use, did endorse the bill in blank, and immediately delivered it back, so endorsed, to *Brown*, in blank, who soon after sold it to *G. Simpson*, cashier of the Bank of the *U. S.* for his *Brown's* own benefit.   That at the time of the endorsements no consideration had taken place between the plaintiff and defendant respecting the bill or endorsements, or respecting any endorsement to be made by them, or either of them, for *Brown*, or for his use or benefit; and that the plaintiff received no consideration for the endorsements, except such as might arise in law from the previous endorsement of the defendant, and from the making of the bill by *Brown*, and that the bill was never delivered to the plaintiff or to the defendant *Brown*, except for the purpose before mentioned.   The plaintiff also gave in evidence, that the bill having been sold to *Simpson*, as before mentioned, was duly presented to the drawee for acceptance and payment, and not having been accepted or paid, was duly and regularly protested, for nonacceptance and nonpayment; of which protest notice was duly and legally given by *Simpson* to *Brown*, and to the plaintiff and defendant, and payment thereof immediately demanded by *Simpson* of *Brown*, who failed to pay it.   Whereupon, notice of the failure was duly given by *Simpson* to the plaintiff and defendant, and payment of the bill was demanded of them by *Simpson*.   The plaintiff further gave in evidence, that he and the defendant, being so called on for payment of the bill, did mutually agree that each of them should pay one half of the sum of money due thereon, but that the right of the plaintiff to recover from the defendant, as the prior endorsor of the bill, the sum so by the plaintiff to

be paid, with interest, should not in any manner be affected by the agreement. And that the plaintiff did, in pursuance of that agreement, on the 12th of December 1802, pay to *Simpson*, cashier of the Bank of the *U. S.* the sum of $15,206 67, being one half of what was then due on the bill. The defendant then prayed the court to direct the jury, that the plaintiff, if the jury should believe the facts so offered in evidence by him, is not entitled in law to recover in this action the sum so paid by him to *Simpson*, cashier of the Bank of the *U. S.* Which opinion, [*Nicholson*, Ch. J.] refused to give. The defendant excepted. Verdict and judgment for the plaintiff, and the defendant appealed to this court.

The cause was argued at the last term before CHASE, Ch. J. BUCHANAN, GANTT, and EARLE, J. and was reargued at the present term before CHASE, Ch. J. POLK, BUCHANAN, GANTT, and EARLE, J.

*Shaaff, W Dorsey, Winder,* and *S. Chase, jr.* for the Appellant, contended, 1. That the declaration was defective, because it was not averred in the *first count* that the defendant had notice of the protest of the bill of exchange for nonpayment; and that the plaintiff took up the bill by paying it, &c. They cited *Rashton vs. Aspinall, Doug.* 683.

2. That if this count is defective, there being a general verdict, it would not be cured, even if there should be a good count in the declaration. They cited *Marriot vs. Lister,* 2 *Wils.* 141. *Holt vs. Scholefield,* 6 *T. R.* 691; and *Baldwin vs. Elphinston,* 2 *W. Blk. Rep.* 1037.

3. That the plaintiff could not recover on the money count stated in the declaration, they cited *Chitty on Bills,* 378, and *Gibson vs. Minet,* 1 *H. Blk. Rep.* 602.

On the *first* bill of exceptions they contended, 1. That it was not competent for the plaintiff below to give in evidence the records of the circuit court, because they were between different persons than the parties in this action.

2. That no parol evidence ought to be admitted to prove a protest of a bill of exchange for nonacceptance or nonpayment.

On the *first point,* they referred to *Peake's Evid.* 34, 35. *Bryden vs. Taylor,* 2 *Harr. & Johns.* 296. *Gittings's Lessee vs. Hall,* 1 *Harr. & Johns.* 18; and *Davis's Lessee*

1810.

Ringgold
vs
Tyson.

vs. *Batty*, *Ibid* 264. On the *second point*, they cited *Peake's Evid.* 107; and *Shaw vs. Markham, Peake's N. P.* 165.

On the *second* bill of exceptions, they contended, 1. That parol evidence that notice in writing had been given to the defendant, ought not to have been admitted, without a previous notice to the defendant to produce such written notice.

2. That notices of the nonacceptance, and nonpayment of the bill of exchange, were not given by the plaintiff to the defendant, but by a third person. On this point they cited *Tindall vs. Brown*, 1 *T. R.* 167; and *Ex Parte Barclay*, 7 *Ves.* 597.

*Key, Harper,* and *T. Buchanan*, for the Appellee, as to the defects in the *first count* in the declaration, referred to the act of 1809, *ch.* 153, *s.* 2.

On the *first* bill of exceptions, they cited *Peake's Evid.* 97, and *Chitty on Bills*, 239, 240.

On the *second* bill of exceptions, they cited *Chitty on Bills*, 239, 240. *Stedman vs. Gooch*, 1 *Esp. Rep.* 5. *Kufh vs. Weston*, 3 *Esp. Rep.* 54. *Saunderson vs. Judge*, 2 *H. Blk. Rep.* 509. *Chapman vs. Lipscombe*, 1 *Johns. Rep.* 296; and *Gotlieb vs. Danvers*, 1 *Esp. Rep.* 455.

On the *third* bill of exceptions, they referred to *Wood vs. Repold*, (*ante* 125.)

THE COURT agreed with the County Court in the opinions given in the several bills of exceptions.

JUDGMENT AFFIRMED.

---

DECEMBER.

RINGGOLD vs. TYSON.

In *assumpsit* on a promissory note by the endorsee against the drawer, the payee is a competent witness to prove the note had been paid to the plaintiff

He is also competent to prove that the note was given on a usurious consideration.

The endorsee or holder of a promissory note cannot recover in his own name on an endorsement in blank

APPEAL from *Washington* County Court, from a judgment rendered in favour of the plaintiff in that court, (the present appellee,) in an action of *assumpsit* on a promissory note, drawn by the defendant, (the appellant,) on the 5th of May 1804, payable to *S. Wilmer*, or order, for $1000, and by *Wilmer* endorsed to the plaintiff. The declaration also contained counts for money lent and advanced, for money had and received, and for money laid out, expended and paid. Plea, the general issue.